[Cite as *In re B.P.*, 2013-Ohio-2714.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| B.P. | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | Case No. 13-CA-17 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Court of Common
Pleas, Juvenile Division, Case No.
2011-AB-0069

JUDGMENT:    Affirmed

DATE OF JUDGMENT:    June 26, 2013

APPEARANCES:

For Appellant    For Appellee

GILBERTO J. CHARRIEZ    JULIE S. BLAISDELL
P.O. Box 1091    239 West Main Street
Lancaster, OH 43130    Suite 101
    Lancaster, OH 43130
For Roberta Prevette

ADRIENNE LARIMER    Guardian ad Litem
118 West Chestnut Street
Lancaster, OH 43130    KRISTI McANAUL
    660 Hill Road North
    Pickerington, OH 43147
For Sherry Oiler

MICHELLE L. EDGAR    For B.P.
414 East Main Street
Suite 200    JAMES DYE
Lancaster, OH 43130    P.O. Box 161
    Pickerington, OH 43147

*Farmer, J.*

{¶1}    On May 3, 2011, B.P., born January 19, 2011, was found to be an abused child and placed in the temporary custody of appellee, Fairfield County Child Protective Services.  Mother of the child is Roberta Prevette; father is appellant, Christopher Oiler.

{¶2}    On August 1, 2011, appellee filed a motion for permanent custody of the child.  Hearings were held on August 21, and November 20, 2012.  By entry filed January 8, 2013, the trial court granted permanent custody of the child to appellee.  Findings of fact and conclusions of law were attached to the entry.

{¶3}    Appellant filed an appeal and this matter is now before this court for consideration.  Assignment of error is as follows:

I

{¶4}    "THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO FAIRFIELD COUNTY CHILD PROTECTIVE SERVICES BECAUSE SAID DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶5}    Appellant claims the trial court erred in granting permanent custody of B.P. to appellee as the decision was not supported by clear and convincing evidence and was against the manifest weight of the evidence.  We disagree.

{¶6}    As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses.  Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.  *Cross Truck v. Jeffries,* 5th Dist. No. CA–5758, (February 10, 1982).  Accordingly, judgments supported by some competent, credible evidence going to all the essential

elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction,* 54 Ohio St.2d 279 (1978).

{¶7}    R.C. 2151.414(E) sets out the factors relevant to determining permanent custody.  Said section states the following in pertinent part:


>      (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
>      (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social

and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(16) Any other factor the court considers relevant.

{¶8} R.C. 2151.414(B) enables a trial court to grant permanent custody of a child if the court determines by clear and convincing evidence that it is in the best interests of the child. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* at 477.

{¶9} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interests of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the

Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

For the purposes of division (D)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the

earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.

{¶10} B.P. has been in appellee's temporary custody for twelve of the last consecutive twenty-two months. In its findings of fact filed January 8, 2013, the trial court found the following:

Fairfield County Child Protective services wanted Christopher Oiler to engage in mental health and parenting counseling. Christopher Oiler did not have insurance, so Fairfield County Child Protective Services investigated Mid-Ohio Psychological Services, New Horizons, and other counseling agencies to determine if any agency would accept Christopher Oiler with a sliding fee scale. Fairfield County Child Protective Services was unable to locate any agency to perform the counseling on a sliding fee scale. If Christopher Oiler had obtained employment where he could obtain insurance, Fairfield County Child Protective Services could have facilitated mental health and parenting counseling.

Christopher Oiler has been steadily employed since approximately February, 2012. Christopher Oiler has chosen to accept employment that has not offered insurance. Christopher Oiler has not exerted diligent efforts to investigate his insurance options within his employment, nor has he sought out a clear explanation as to when he would be eligible for insurance within his employment.

Fairfield County Child Protective Services wanted Christopher Oiler to provide safe, stable housing for [B.P.]. Since becoming involved with Roberta Prevette, mother of [B.P.], Christopher Oiler has moved five (5) times. Christopher Oiler has lived with Roberta Prevette, Roberta Prevette's parents, his mother, and now, his girlfriend. Christopher Oiler agrees that it is not a good idea for children to move that many times. Christopher Oiler believed that there was no reason for him to have a stable home until he would obtain custody of [B.P.]. Christopher Oiler has not obtained independent, stable housing.

Following the placement of [B.P.] outside his home and notwithstanding reasonable case planning and diligent efforts by Fairfield County Child Protective Services to assist Christopher Oiler to remedy the problems that initially caused the child to be placed outside the home, Christopher Oiler has failed continuously and repeatedly to substantially remedy the condition causing [B.P.] to be placed outside the child's home. Christopher Oiler has not utilized services and resources that were made available to him for the purpose of changing parental conduct to allow him to resume and maintain parental duties.

Christopher Oiler has demonstrated a lack of commitment toward [B.P.] by failing to regularly support, visit, or communicate with [B.P.] when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for [B.P.].

***

The lack of communication with a significant other appears to be a pattern for Christopher Oiler. At the beginning of his relationship with Roberta Prevette, he knew that she did not have custody of her children, but did not ask her why she did not have custody of her children. Christopher Oiler also claims not to have known that Roberta Prevette had issues with drugs and/or alcohol until prior to her pregnancy with [B.P.]. Although he lived with Roberta Prevette throughout most of the pregnancy with [B.P.], Christopher Oiler claims to not have known that Roberta Prevette used drugs throughout the pregnancy. At birth, [B.P.] tested positive for opiates. Christopher Oiler claims that he did not ask Roberta Prevette if she had used opiates during the pregnancy. This is relevant to the Court.

[B.P.] and her siblings were placed with Roberta Prevette on February 20, 2011, on a visit status with Christopher Oiler as the protective capacity for the children. From February 20, 2011 to February 28, 2011, Christopher Oiler allowed people who are known drug users, specifically Ronda Prevette and Lucas Davis, to be in the presence of the children on two (2) occasions. Christopher Oiler failed in his role as the protective capacity for [B.P.] or her half siblings, as Christopher Oiler left all of the children alone with Roberta Prevette for at least two (2) hours. Christopher Oiler claims not to have known whether Roberta Prevette was using drugs during this period. On February 28, 2011, it was discovered that [B.P.], date of birth: January 19, 2011, suffered significant injuries, including but not limited to, six (6) fractured ribs and a fractured left wrist.

No criminal charges concerning these injuries have been filed. Christopher Oiler was a suspect. This information is relevant to the Court.

After [B.P.]'s release from the hospital due to her injuries, Christopher Oiler maintained his relationship with Roberta Prevette, and was dishonest with Fairfield County Child Protective Service and his mother about his contact with Roberta Prevette. This information is relevant to the Court.

Christopher Oiler continues to demonstrate that he does not have the ability to ensure [B.P.]'s safety. If she were to be placed in the legal custody of Christopher Oiler, history indicates that she could be at risk for physical harm, and at risk of contact with individuals who abuse drugs and/or alcohol. Given these circumstances, the Court cannot find that it is in the best interest of [B.P.] for her to be placed in the legal custody of Christopher Oiler.

{¶11} Appellant argues the following specific findings of the trial court are in error: appellee made diligent efforts to remedy the issues, appellant failed to obtain insurance to provide assistance for his counseling, appellant failed to regularly support and visit [B.P.], appellant's live-in girlfriend failed to care for her own child, appellant failed to communicate and ensure the safety and protection of [B.P.], and appellant or his family could not serve as permanent placement.

{¶12} The evidence established appellant lived in numerous different residences and he basically lived with others, never in his own place. Day 1 T. at 136, 141, 142-148. He readily admitted to unstable housing conditions. *Id.* at 147, 151. While the

mother of [B.P.] was pregnant, appellant disregarded her drug abuse and thereby failed to protect his unborn child. *Id.* at 163-164. B.P. was born addicted to opiates and suffered withdrawal symptoms and appellant failed to discuss the issue with B.P.'s mother because "I didn't want to know." *Id.* While B.P. was in his exclusive custody, he was never to leave the child unsupervised with the child's mother. Day 2 T. at 38. He failed to follow this condition of custody. *Id.* at 38-39. B.P. suffered six fractured ribs and a fractured left wrist which were identified as child abuse. Appellant, his mother, and the child's mother were all considered suspects, although no one was charged. Day 1 T. at 178, 186, 211; Day 2 T. at 37. It was not refuted that the injuries occurred on appellant's watch while he had custody and supervision of B.P. Appellant had virtually no plan for the care of B.P. but to raise the child with his new girlfriend. Day 1 T. at 196. Appellant did not provide child support. *Id.* at 202.

{¶13} We find these facts support the trial court's findings of appellant's lack of communication, failure to support and ensure the safety and protection of B.P., and failure to provide a secure placement.

{¶14} The record contains evidence concerning appellant's need to obtain counseling and lack of financial ability to fulfill this case plan requirement. Medical insurance was needed in order to secure counseling. Day 2 T. at 28, 30. Appellant quit a job at Anchor just prior to being eligible for insurance, and he failed to fully investigate the availability of medical insurance at Anchor or at his new place of employment. Day 1 T. at 192-195, Day 2 T. at 30. Appellant never sought outside assistance to receive counseling. Day 1 T. at 195, 213. For over one and one-half years, appellant failed to obtain counseling, and failed to support B.P. Day 2 T. at 41. We find these facts

support the trial court's conclusion that due diligence by appellee was made and appellant failed to fulfill the case plan.

{¶15} Appellant's sole plan for B.P. was to raise the child with his live-in girlfriend. Day 1 T. at 196. However, the girlfriend did not have custody of her own child and the reasons were unknown. Day 2 T. at 32-33. Appellant's attitude about continued contact with B.P.'s mother, who freely relinquished her rights to parent, also was of concern. *Id.* at 39-40.

{¶16} Lastly, appellant argues his mother, Sherry Oiler, should have been granted legal custody of the child as a relative placement. Ms. Oiler's appeal in Case No. 13-CA-12 assigned the same error which we denied. We hereby adopt our opinion therein by reference.

{¶17} The sole assignment of error is denied.

{¶18} The judgment of the Court of Common Pleas of Fairfield County, Ohio, Juvenile Division is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Delaney, J. concur.

_____

_____

_____

SGF/sg 522                                                                JUDGES

[Cite as *In re B.P.*, 2013-Ohio-2714.]

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT


IN THE MATTER OF:                    :
                                     :
B.P.                                 :          JUDGMENT ENTRY
                                     :
                                     :
                                     :
                                     :
                                     :          CASE NO. 13-CA-17


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio, Juvenile Division is affirmed. Costs to appellant.



_____


_____


_____
                                        JUDGES